# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JOSEPHINE ROSE BAILEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 12 C 9659** |
| **v.** | ) | |
| | ) | **Magistrate Judge** |
| **CAROLYN W. COLVIN, Acting** | ) | **Maria Valdez** |
| **Commissioner of Social Security,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision

of the Commissioner of Social Security denying Plaintiff Josephine Rose Bailey's

claim for Disability Insurance Benefits. The parties have consented to the

jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 25]

is granted in part.

## BACKGROUND

### I.    PROCEDURAL HISTORY

On August 13, 2009, Josephine Rose Bailey filed a claim for Disability

Insurance Benefits alleging disability since February 15, 2009.[2] The claim was

---

[1] Carolyn W. Colvin is substituted for her predecessor, Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

[2] On the same day, Bailey also filed an application for Supplemental Security Income under 42 U.S.C. § 1381 *et seq.* (R. 164.) In this appeal, however, the parties address only the denial of Bailey's application for Disability Insurance Benefits.

denied initially and upon reconsideration, after which Bailey timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 15, 2011. Bailey personally appeared and testified at the hearing and was represented by counsel. Bailey's husband, Donald Bailey, and vocational expert Randall Harding also testified.

On September 19, 2011 the ALJ denied Bailey's claim, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Bailey's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II.    FACTUAL BACKGROUND[3]

### A.    <u>Background</u>

Bailey was born on November 23, 1954 and was 56 years old at the time of the ALJ hearing. She had previously worked as a certified nursing assistant and surgical technician.

In February 2009, Bailey attended a birthday party for her brother at a restaurant. During the party, her brother collapsed and ultimately died at a hospital days later. After her brother's death Bailey became very depressed, leaving her job later that month. Bailey applied for disability benefits on August 13, 2009, claiming disability arising from severe depression as well as high blood pressure and a thyroid disorder. In April 2010, Bailey was treated at Linden Oaks, a psychiatric facility at Edward Hospital, for four weeks of daytime treatment.

---

[3] The following facts from the parties' briefs are undisputed unless otherwise noted.

### B.    Medical Evidence

In the immediate aftermath of her brother's collapse, Bailey visited Dr. Karen Shively, who diagnosed her with major depression and prescribed Xanax. In March, Bailey reported difficulty sleeping, and Dr. Shivley prescribed Ambien and Celexa. In May, Bailey reported worsening symptoms and was prescribed Effexor. She also began seeing psychologist Patricia Miller, Ph.D., whom she ultimately saw for nine sessions. Dr. Miller also supervised Bailey's treatment at Linden Oaks. Dr. Miller, however, apparently does not maintain treatment notes. Instead, Dr. Miller submitted two analyses of Bailey's condition. In October 2009, Miller diagnosed Bailey with recurring depression "with reactive elements." (R. 366.) In June 2010, Miller submitted a slightly more detailed analysis, stating that Bailey had been prescribed different medications "with no significant relief of her depression." (R. 365.) Dr. Miller stated that Bailey's psychological issues arose from "repeated abuses beginning in childhood" and domestic violence perpetrated upon her during her first marriage. *Id.* Dr. Miller noted that, "[t]hough not suicidal or homicidal, the patient is deeply depressed and [is] withdrawing from life." *Id.* Miller concluded by stating that, while the "prognosis for the treatment is guarded to good, . . . the course is long term and a return to gainful employment is usually years, not weeks" in the future. *Id.*

In mid-January 2010, Dr. Frank Jimenez, a state agency physician, reviewed Bailey's file and concluded that her hypertension and depression were not severe. Jimenez found Bailey's statements as to her symptoms partially credible, but

ultimately determined that she was not disabled. Dr. Jimenez later affirmed his initial determination on reconsideration.

In February 2010, Bailey was evaluated by Dr. Michael Stone, Psy.D., a state agency consulting psychologist. Dr. Stone noted that Bailey's behavior was tense and serious through the examination, although she was "compliant and reasonably responsive during the interview." (R. 337.) He wrote that Bailey's "affect was depressed but appropriate to content," and that her "mood appeared dysthymic and dysphoric." (R. 337.) Bailey also "exhibited problems maintaining a consistent level of attention and concentration throughout [the] evaluation," but performed calculations adequately and demonstrated general knowledge. (R. 338.)

In March 2010, Bailey's file was reviewed by another agency physician, Dr. Tyrone Hollerauer, Psy.D. Dr. Hollerauer affirmed the diagnosis of depression, but found Bailey's impairments to be nonsevere. Hollerauer determined that Bailey had mild limitations in maintaining her activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. With respect to Bailey's credibility, Hollerauer concluded that she was only partially credible because she was being treated with a "relatively modest" does of medication and was "able to do tasks as her medical condition will allow." (R. 352.)

## C. **Plaintiff's Testimony**

Bailey testified that she had become depressed after her brother's death. However, after attending therapy, Bailey believed that her depression arose not only from her brother's death but from sexual abuse she had suffered when an

adolescent as well as domestic violence experienced both as a child and during her first marriage. Bailey stated that she had previously worked as obstetrics technician in labor and delivery until February of 2009. After her brother's death, however, her depression had gotten more severe, resulting in her treatment at Linden Oaks. Bailey felt hopeless and that believed that her condition was not improving. She also has difficulty concentrating, and had lost interest in many things which had interested her before the onset of her depression. Bailey had a computer, but used it only to access bank account information or to "sign on to Facebook to see what my daughter in Nashville is doing." (R. 50.) Bailey also stated that she had gained about 40 pounds since the onset of her depression.

### D.    **Vocational Expert Testimony**

Vocational Expert ("VE") Randall Harding also testified at the hearing. He questioned Bailey about the specific duties of her prior work as a certified nursing assistant and surgical technician. The ALJ then asked the VE whether a hypothetical person with the same age, education, and work experience as Bailey, and a residual functional capacity ("RFC") limiting her to the full range of medium work could perform any of Bailey's past work. The VE said such a person could perform the positions of surgical technician and nursing assistant.

The ALJ then limited the hypothetical to light work. The ALJ responded that the person could still perform the position of surgical technician, although only as listed in the Dictionary of Occupational Titles, not as actually performed by Bailey.

The ALJ next limited the hypothetical person to medium work, but added a restriction limiting the work "to simple, repetitive, and routine work tasks." (R. 79.) The VE concluded that such a person would not be able to perform any of Bailey's past work, but would be able to perform the jobs of laundry worker II (1,200 jobs regionally, 58,000 nationally); janitor cleaner I (2,500 regionally, 68,000 nationally); and floor waxer (1,600 regionally, 68,000 nationally). The ALJ then asked the VE if, within the same parameters, work would be available for an individual who—"due to a combination of symptoms, inability to concentrate, [and] inability to complete tasks"—would "likely be off task for 25 percent of a workday." The VE responded that there would be no work for an individual with such a restriction. (R. 79.)

Bailey asked the VE whether any jobs would remain were the hypothetical individual additionally restricted to receiving only "simple one-step instructions," working only with people "she felt comfortable with," being required to have "only superficial contact with the public, supervisors, and coworkers; and . . . not work[ing] in close coordination with others." The VE stated that the hypothetical person could perform the job of floor waxer. (R. 80.)

### E.   **ALJ Decision**

The ALJ analyzed Bailey's case using the five-step procedure for determining disability under the Social Security regulations. *See* 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found that Bailey had not engaged in substantial gainful activity since her onset date of February 15, 2009. At step two, the ALJ concluded that Bailey had the severe impairment of depression. Although noting MRI findings of

degenerative changes and rotator cuff tendonitis, the ALJ found that the otherwise normal examination results and lacking record of treatment or medication indicated that any impairment related to Bailey's shoulder was non-severe. The ALJ also noticed that, while Bailey was hypertensive and took blood pressure medication, there was no record evidence indicating that her hypertension was severe. Finally, the ALJ found that, while Bailey was obese, there was no evidence that her obesity resulted in physical limitations or functional loss, and therefore found that impairment to be non-severe.

The ALJ concluded at step three that Bailey's impairments did not meet or medically equal a Listing. The ALJ specifically considered Listing 12.04. *See* 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.04. She concluded that Bailey had mild restrictions in the domains of maintaining her activities of daily living and social functioning, and moderate limitations with regard to maintaining concentration, persistence or pace. The ALJ also concluded that Bailey had undergone no episodes of decompensation.

The ALJ then determined that Bailey retained the RFC to perform medium work, but limited that work to simple, repetitive, and routine tasks. The ALJ found that Bailey's impairments could lead to the symptoms of which she complained. After summarizing the evidence in the case, however, the ALJ concluded that Bailey's allegations as to the extent of those limitations were not credible. With respect to physical limitations, the ALJ found that Bailey's claims were contradicted by the lack of medical findings which could confirm such a limitation. With respect

to her depression, the ALJ concluded that Bailey's subjective complaints were "simply not supported by the objective evidence of record," and that the testimony about "changes in her overall condition is not enough to support a finding of total disability absent such objective evidence." (R. 37.)

Based on her RFC, the ALJ concluded at step four that Bailey could not perform her past work. At step five, however, the ALJ concluded based on Bailey's age, education, work experience and RFC, the medical evidence, and the VE's testimony, that Bailey could perform the jobs of laundry worker II, janitor cleaner I, and floor waxer, which existed in significant numbers in the national economy. Accordingly, the ALJ found Bailey not disabled under the Social Security Act.

## **DISCUSSION**

### I.    **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In determining disability, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work?  20 C.F.R. § 404.1520(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.   JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is therefore limited to determining whether the ALJ's findings are supported by substantial evidence or are based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

In reaching a conclusion, the ALJ "must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012); *see also Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Where conflicting evidence would allow reasonable minds to differ, however, the Commissioner—not the court—is responsible for determining whether a claimant is disabled. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## III.  ANALYSIS

Bailey argues that the ALJ erred by determining that her impairments did not meet or equal Listing 12.04, in assessing the reports of her treating sources, in assessing her credibility, and in determining her residual functional capacity. Although the ALJ did not err in finding that Bailey's impairments did not meet or equal the Listing, because of other errors as described below, Bailey is correct and remand is appropriate in this case.

### A.  <u>Analysis of Listing 12.04</u>

Bailey claims that the ALJ erred in determining that her impairments did not meet or equal Listing 12.04, Affective Disorders. Affective disorders, a subset of mental disorders, are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.04. For a claimant's impairment to meet or equal Listing 12.04, a claimant

must satisfy the requirements laid out in sections 12.04(A) and (B)—the "A criteria" and "B criteria," *see Larson v. Astrue*, 615 F.3d 744, 748 (7th Cir. 2010)—or she must satisfy the requirements of paragraph (C), the "C criteria." *See* 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.04. Bailey does not argue that her impairments met the C criteria.

In order to meet the B criteria, a claimant must show that her disorder results in "at least two of the following": "Marked restriction of activities of daily living"; "Marked difficulties in maintaining social functioning"; "Marked difficulties in maintaining concentration, persistence, or pace"; or "Repeated episodes of decompensation, each of extended duration." *Id.* § 12.04(B). The ALJ found that Bailey had mild restrictions in activities of daily living and social functioning. The ALJ also found that Bailey had moderate restrictions in concentration, persistence or pace. Finally, the ALJ concluded that Bailey had experienced no episodes of decompensation which have been of extended duration. Accordingly, the ALJ found that Bailey's impairment did not meet or equal Listing 12.04.

Bailey argues that the ALJ erred by finding that she did not have marked limitations in maintaining social functioning and maintaining concentration, persistence or pace, and by finding that she did not have repeated episodes of decompensation. As will be discussed below, however, the ALJ did not err with respect to social function or concentration, persistence, or pace, and any error in respect to episodes of decompensation was harmless.

### 1. *Maintaining Social Functioning and Maintaining Concentration, Persistence or Pace*

With respect to "maintaining social functioning," Bailey argues that the ALJ erred by failing to consider certain some evidence and to properly weigh other evidence. She claims that the ALJ erroneously found that she "has no problems with family, friends and neighbors," but argues that "[t]his is inadequate discussion [sic] as she is withdrawing from life and has a pervasive loss of interest in them." [Pl.'s Mot. at 9.] Bailey also claims that the ALJ improperly weighed her use of Facebook, arguing that testimony established she used Facebook only to contact her daughter, and not to interact with family or friends as the ALJ found. She also contends that the ALJ ignored her husband's testimony about her limitations. Similarly, with regard to maintaining concentration, persistence, or pace, Bailey argues—without citation to the record—that the ALJ erred because "[t]his is one area where everyone agrees that [Bailey] has problems and the ALJ misstates the seriousness by stating she can perform calculations." (Pl.'s Mot. at 9.) She also argues that the ALJ erred by failing to specifically reference notes from the field officer's interview of Bailey in August 2009 where the officer noted that Bailey had difficulty concentrating, and generally references the treatment notes of Dr. Stone.

In each case, however, the ALJ addressed the evidence Bailey cites in reaching her conclusion. Although an ALJ cannot ignore entire lines of evidence, she "need not mention every snippet of evidence in the record," but instead must simply "connect the evidence to the conclusion." *Arnett*, 676 F.3d at 592. In this case, the ALJ appropriately addressed the lines of evidence identified by Bailey. For

instance, contrary to Bailey's contention the ALJ explicitly addressed Bailey's husband's testimony about "changes in her interactions with others," as well as Dr. Stone's observations (which formed the basis for the ALJ's conclusion that Bailey was moderately limited in this domain). (R. 33.) And the ALJ also discussed testimony and records from various sources describing Bailey's alleged inability to concentrate and other behavioral manifestations of her impairments. The ALJ did not err in her analysis on this point.

Bailey also argues that the ALJ failed to provide appropriate weight to testimony in the record. But, as a reviewing court, this Court "do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford*, 227 F.3d at 869. Instead, it "will reverse the Commissioner's findings only if they are not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Id.* Here, substantial evidence supports the ALJ's findings on both maintaining social functioning and maintaining concentration, persistence or pace. With respect to the former, for instance, the ALJ noted testimony from Bailey herself stating that she visits with her family, attends church, shops and otherwise goes out alone in reaching his conclusion. (R. 33.) With respect to the latter, the ALJ noted that—while the record supported a finding of moderate limitations with regard to concentration, persistence or pace—it did not support a more significant limitation due to the examination of Dr. Michael Stone, which had found no impairment in Bailey's ability to perform calculations and exercise judgment. (R. 33.) Furthermore,

the ALJ noted that no medical source had submitted an opinion that Bailey's impairments met or medically equaled a listing, while referencing the opinions of the two state agency consultants who had determined that they did not. On these points, there is "such evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999) (quoting *Richardson*, 402 U.S. at 401).

### 2. Repeated episodes of decompensation, each of extended duration

The ALJ also found that Bailey had experienced no episodes of decompensation which were of extended duration. In doing so, the ALJ noted that the record did not contain "indication of significant alteration in medication; or documentation of the need for a more structured psychological support system such as hospitalizations, placement in a halfway house, or a highly structured and directing household." (R. 33.) Bailey argues that the ALJ erred by not considering her participation in a day program at Linden Oaks as an episode of decompensation, and she is correct that—by failing to at least analyze her treatment at Linden Oaks as such a potential episode—the ALJ erred.

As the ALJ appeared to recognize, a claimant need not be hospitalized to experience an episode of decompensation. As the Seventh Circuit has specified, "episodes of decompensation" "is not a self-defining phrase," and "[a]n incident—such as hospitalization or placement in a halfway house—that signals the need for a

more structured psychological support system would qualify as an episode of decompensation, but so would many other scenarios." [4] *Larson*, 615 F.3d at 750.

The ALJ's statement that the record did not contain "documentation of the need for a more structured psychological support system such as hospitalizations" is simply incorrect. Bailey attended the daytime program at Linden Oaks for four weeks in 2010, (R. 365, 355-61), because—according to Bailey—her depression "kept getting more and more severe. I couldn't read a book or watch a TV program without crying." (R. 54.) This would certainly have the potential to be an incident which "signals the need for a more structured psychological support system," thereby potentially qualifying as an episode of decompensation. By failing to even consider the Linden Oaks treatment as an episode of decompensation, the ALJ overlooked evidence she had a duty to confront. *See Larson*, 615 F.3d at 748; *cf. Galvan v. Astrue*, No. 10 C 4824, 2011 WL 4501424, at *9 (N.D. Ill. Sept. 28, 2011) (noting ALJ's conclusion that "a single-day outpatient hospitalization [the claimant] experienced . . . was the only documentation of any possible decompensation").

---

[4] In full, the Listings specify that:

> Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00(C)(4).

However, even if her treatment at Linden Oaks was an episode of decompensation, the ALJ's error in failing to recognize it as such would be harmless. In the social security context, an error is harmless if a reviewing court "can say with great confidence" that "no reasonable ALJ would reach a contrary decision on remand." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). Even if Bailey's treatment at Linden Oaks qualified as an episode of decompensation, it would constitute only a single such episode. In order to satisfy this part of the B criteria, however, Bailey would have to have shown three episodes of decompensation within 1 year, each lasting for at least 2 weeks. *See* 20 C.F.R. Pt. 404, Subpart P., App. 1, §§ 12.04(B)(4), 12.00(C)(4). Since Bailey has put forward only a single episode of decompensation that was overlooked by the ALJ—and since the ALJ did not err in determining the other domains as described above—any error in failing to recognize that episode would not have led to a finding that Bailey is disabled. Therefore, the ALJ's failure to properly evaluate the admission to Linden Oaks as an episode of decompensation is harmless.[5]

B.     **Treating Source Opinions**

Bailey also argues that the ALJ erred in failing to give appropriate weight to the opinions of her treating sources, Drs. Miller and Ashan, in determining the extent of her impairments. A treating source's opinion must be given controlling

---

[5] Bailey also argues that the ALJ erred because her discussion of Listing 12.04 did not include a determination as to whether Bailey's impairments met the requirements of the Listing's A criteria. But a claimant must prove that they meet *both* the A and B criteria in order to prove disability, as described above; thus, where a claimant fails to meet the B criteria, she "could not have qualified for Listing 12.04 regardless of whether or not she satisfied criterion A, so the ALJ's failure to discuss that criterion [is] not an error." *Smith v. Colvin*, 931 F. Supp. 2d 890, 900 (N.D. Ill. 2013).

weight if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2)[6]; *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). "An ALJ 'must offer good reasons for discounting a treating physician's opinion.' " *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (quoting *Larson*, 615 F.3d at 749) (further quotation and citation omitted). However, "the ALJ is not required to give controlling weight to the ultimate conclusion of disability—a finding specifically reserved for the Commissioner." *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010); *see* 20 C.F.R. § 404.1527(d)(1).

Where an ALJ does not give controlling weight to a treating source's opinion, she must nonetheless determine what value that assessment does merit by considering the factors specified in the regulation, which include: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See Scott*, 647 F.3d at 740; 20 C.F.R. § 404.1527(c). However, "[i]f the ALJ discounts the physician's opinion after considering these factors," the decision stands so long as the ALJ "minimally articulate[d]" her reasons, a "very deferential standard" that the Seventh Circuit has deemed "lax." *Elder*, 529 F.3d at 415 (quotations omitted).

---

[6] At the time of Bailey's alleged onset of disability, the current paragraph 404.1527(c) was codified as paragraph 404.1527(d); in 2012, the former paragraph (c) of the regulation was deleted, and paragraphs (d) through (f) were redesignated as paragraphs (c) through (e) without alteration in the content relevant here. *See* How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10651, 10656 (Feb. 23, 2012). Because the change was therefore cosmetic, references in this opinion are to the current version of section 404.1527.

### 1. *Dr. Miller*

Dr. Miller submitted a short, narrative form noting that she had first seen Bailey in 2009 and had treated her for nine sessions and overseen her treatment at Linden Oaks. (R. 365.) Dr. Miller stated that Bailey had been medicated but "with no significant relief of her depression" and noted that, "[t]hough not suicidal or homicidal, the patient is deeply depressed and withdrawing from life." *Id.* Dr. Miller concluded that, while "[t]he prognosis for the treatment is guarded to good, . . . the course is long term and a return to gainful employment is usually years, not weeks," and that she did not believe that Bailey could currently return to work. *Id.*

The ALJ declined to give Dr. Miller's opinion significant weight first because there was no function-by-function analysis of Bailey's abilities present in Dr. Miller's evaluation. (R. 37.) But Bailey is correct that "the regulations do not require a treating physician to provide a function-by-function analysis of a claimant's ability to perform daily living or work-related activities, nor is the ALJ required to provide one." *Pursell v. Colvin*, No. 12 CV 5455, 2013 WL 3354464, at *12 (N.D. Ill. July 3, 2013) (quotation omitted); *see Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009) ("Although the 'RFC assessment is a function-by-function assessment,' . . . the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient . . . .").

A second reason given by the ALJ to discount Dr. Miller's opinion was that "it [was] not entirely clear what specific symptoms of the claimant's condition Dr.

Miller was referring to which would preclude her entirely from full-time employment." (R. 37.) Bailey argues that, in this situation, the ALJ had a duty to recontact Dr. Miller to solicit additional information to determine the basis for her opinion. The Commissioner argues that the ALJ properly discounted Miller's opinion because it was not adequately supported and because the record contained other evidence from which the ALJ could permissibly draw her conclusion.

Bailey is correct. While an ALJ need not solicit additional information if she simply finds a physician's opinion unsupported, "[a]n ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004). *But see Gildon v. Astrue*, 260 F. App'x 927, 929 (7th Cir. 2008) ("[T]he quality of the documents [the claimant] submitted is so poor that it is impossible to determine what conditions or symptoms led the doctors to conclude that [the claimant] was disabled. An ALJ is not required to accept a doctor's opinion if it 'is brief, conclusory, and inadequately supported by clinical findings.' ") (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.2002)). And while the Commissioner argues that "the ALJ did not find the record 'inadequate,' but simply found that the evidence did not support Dr. Miller's conclusion on an issue reserved to the Commissioner," (Pl.'s Br. at 9), the language of the ALJ's opinion is directly contradictory: the ALJ simply noted that the basis for the opinion could not be discerned based on the record and did not discuss the medical evidence contradicting the source's opinion in reaching her conclusion. *Cf. Simila v. Astrue*,

573 F.3d 503, 516-17 (7th Cir. 2009) (no error in failing to recontact treating source where "the ALJ discerned and discussed the evidence upon which [the source] relied" because the "record was not 'inadequate.' The ALJ simply found that this evidence failed to support [the source's] conclusions"). Because the ALJ found that the basis for Dr. Miller's conclusion was not "readily discernible," the ALJ had a duty to clarify the basis for that opinion.

The other reason for discounting Dr. Miller's testimony given by the ALJ was that it was not apparent that Dr. Miller was familiar with the definition of disability used in the regulations. While this is a relevant concern in assessing a treating source's opinion, *see* 20 C.F.R. § 404.1527(c)(6), given the other errors in the ALJ's assessment of Dr. Miller's opinion remand here is appropriate for a full consideration of Dr. Miller's opinion.

### 2. *Dr. Ashan*

With regard to Dr. Ashan, Bailey argues that the ALJ erred in failing to give her opinion controlling weight based on the factors specified in 20 C.F.R. § 404.1527(c). The Commissioner, however, argues that the ALJ appropriately discounted the opinion based on adequate consideration of those factors. On this point, there is some confusion because the ALJ did not explicitly address the regulatory factors in reaching her conclusion as to the opinions of Drs. Miller or Ashan. The Seventh Circuit has issued somewhat conflicting signals as to whether the failure to explicitly address the factors laid out in 20 C.F.R. § 404.1527(c)(2) alone constitutes error necessitating remand. *Compare Campbell*, 627 F.3d at 308

(remanding where "[t]he ALJ's decision indicate[d] that she considered opinion evidence in accordance with §§ 404.1527" but did not "explicitly address the checklist of factors as applied to the medical opinion evidence") *with Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013) (finding ALJ opinion sufficient where, "while the ALJ did not explicitly weigh each factor in discussing [the doctor's conclusion], his decision makes clear that he was aware of and considered many of the factors"). Much of the confusion on this issue could be remedied by an explicit discussion of the regulatory factors; given that remand is otherwise appropriate, as to the opinions of both Drs. Ashan and Miller the ALJ should clarify her findings for explicitly with regard to the regulations in order to eliminate any confusion.

C. <u>Credibility</u>

Bailey also argues that the ALJ erred when she determined that Bailey's assertions as to the effects of her physical and mental impairments were not credible. Although the ALJ did not err in assessing Bailey's credibility with regard to her physical impairments, she erred with respect to Bailey's mental impairments.

1. *Boilerplate Language*

Bailey first argues that the ALJ's conclusion as to Bailey's credibility is deficient because it included "boilerplate" language similar to that criticized by the Seventh Circuit in other cases. *See Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014); *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). It is true that the ALJ's evaluation of credibility included such language; however, the concern of cases such as *Pierce* and *Bjornson* is not the use of that language alone, but rather that an ALJ

not substitute that language for an actual evaluation of a claimant's credibility based on the evidence presented. *See, e.g.*, *Bjornson*, 671 F.3d at 644-46; *Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011) (holding error where "the ALJ gave no explanation whatsoever for finding her testimony not credible" outside boilerplate assertions). Where an ALJ employs such boilerplate language but nonetheless sufficiently analyzes a claimant's credibility, there is no error. *See Richison v. Astrue*, 462 F. App'x 622, 625 (7th Cir. 2012); *Rogers v. Colvin*, 37 F. Supp. 3d 987, 1001 (N.D. Ill. 2014) (discussing "case after case" explaining that "what really matters is whether the ALJ gave reasons for finding the plaintiff not credible" despite use of boilerplate). The ALJ did not err by using this language alone.

### 2. *Limitations Arising From Physical Impairments*

Bailey also argues that the ALJ erred when he determined that her testimony as to the extent of her physical impairments was not credible. Bailey points to evidence in the record—her obesity, hypertension, imaging tests showing a degenerative rotator cuff condition, and a bone density study—and suggests that these pieces of evidence were overlooked by the ALJ. However, the ALJ explicitly noted these conditions in his analysis and in reaching his conclusion discussed Bailey's lack of treatment for her physical conditions, otherwise normal test results, and notes from her treating physicians which failed to indicate any significant physical impairment arising from these conditions. (R. 36.) With respect to Bailey's physical symptoms, the "ALJ's determination was reasoned and supported," and there was no error. *See Elder*, 529 F.3d at 413; *Powers v. Apfel*, 207 F.3d 431, 435

(7th Cir. 2000) (credibility determination not erroneous where resting partly on "discrepancy between the minimal impairment expected from [claimant's] conditions and her testimony of debilitating pain").

### 3. *Limitations Arising from Mental Impairments*

Bailey also contends that the ALJ erred by failing to address certain evidence bearing on her credibility as to the extent of her mental impairments. Here, however, the ALJ explicitly noted the evidence Bailey argues was overlooked—the testimony of Bailey and her husband discussing the effects of her depression and her treatment at Linden Oaks—in reaching her decision. The ALJ simply did not overlook any of the evidence as Bailey argues. Bailey is correct, however, that—despite acknowledging this evidence in her opinion—the ALJ did not appropriately analyze that evidence in reaching her conclusion.

In making her credibility determination, "[t]he ALJ must consider a number of factors imposed by regulation . . . and must support credibility findings with evidence in the record." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, 1996 WL 374186. Here, despite referencing the evidence discussed above in her analysis, the only reason the ALJ gave for finding Bailey not credible with respect to the extent of her mental impairment was that her allegations were "simply not supported by the objective evidence of record," and that—while Bailey's husband's testimony supported her claims—Bailey's "testimony about the changes in her overall condition is not enough to support a finding of total disability absent such objective evidence." (R. 37.)

These reasons were not sufficient to provide substantial evidence for the ALJ's conclusion. As the Seventh Circuit has repeatedly held, "a lack of medical evidence alone is an insufficient reason to discredit testimony." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *see also* SSR 96-7p, 1996 WL 374186, at *7 ("If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms.").[7] While the ALJ noted Bailey's alleged symptoms as described above and gave a summary of the evidence in the file, she gave no further indication of the bases for credibility finding. With respect to the effects of her mental impairments, then, the ALJ "failed to build a logical bridge between the evidence and his conclusion that [Bailey's] testimony was not credible." *Villano*, 556 F. 3d at 562.

## C.     Residual Functional Capacity

Bailey also argues that the ALJ erred by failing to appropriately limit her RFC to account for her mental impairments and failed to appropriately question the VE regarding the effects of those impairments. A claimant's RFC is the most that a claimant can do despite her limitations. *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184. "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments," *Villano*, 556 F.3d

---

[7] Interpretive rules, such as Social Security Rulings ("SSR"), do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

at 563, and "[m]ental limitations must be part of the RFC assessment." *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008); *see* 20 C.F.R § 404.1545(c).

At step five of the analysis, the ALJ considers whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). To prove that the claimant is not disabled at step five, the Commissioner must show that there are a significant number of jobs in the national economy that the claimant can perform based on his or her RFC. 20 C.F.R. § 404.1560(c)(2). A VE is typically used in this analysis, and the VE's testimony often proceeds through answers to hypothetical questions posed by the ALJ about jobs that a person with the claimant's RFC could perform. *See Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009). "When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record. More specifically, the question must account for documented limitations of 'concentration, persistence or pace.'" *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (internal citations and quotation omitted).

Bailey contends that the ALJ found limits as to concentration, persistence or pace as part of her RFC, that the ALJ's hypothetical to the VE failed to account for these limitations, and therefore that the ALJ erred. The Commissioner argues that the ALJ did not, in fact, find that Bailey had limitations with regard to concentration, persistence or pace as part of her RFC; therefore, the Commissioner argues that there was no error in this omission.

Despite the Commissioner's arguments to the contrary, however, it is clear that—although referencing the analysis undertaken at step three in doing so—the ALJ found that at least some limitation as to concentration, persistence or pace was part of Bailey's RFC.[8] The ALJ summarized her RFC finding by concluding that "overall [Bailey] would still be capable of performing work on a sustained basis that involves only simple, repetitive, and routine work tasks," a conclusion that was "based on a number of factors." (R. 34.) In discussing her reasoning, the ALJ noted that such a limitation had been imposed considering Bailey's mental impairment "in combination with what I find to be a moderate limitation to maintain concentration, persistence, or pace as described above under the 'paragraph B' criteria . . . ." (R. 36.) Later in the opinion, however, the ALJ stated that she "limited [Bailey's RFC] to simple, routine, repetitive work despite evidence which reveals that she may have less than mild restrictions in ability to maintain concentration, persistence, or pace as I discussed in the 'paragraph B' criteria above."[9] (R. 36.) Therefore, although it is unclear as to the extent of the impact, it is clear that the ALJ found at

[8] The Commissioner also argues that such an omission would be appropriate because an ALJ's finding as to concentration, persistence or pace as part of the "special technique" applicable to mental impairments at step three need not translate into an equivalent RFC finding. *See* 20 C.F.R. § 404.1520a(c)(3), (d). While this is true, an ALJ must nonetheless explain why a limitation as to concentration, persistence or pace noted at step three does not also result in a limitation to a claimant's RFC. *See Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003). However, as the ALJ in this case clearly found that *some* limitation as to concentration, persistence or pace was part of Bailey's RFC—leaving only the extent of those limitations unclear—this argument need not be addressed further.

[9] In addition to being inconsistent with the prior statement, this description is in tension with the ALJ's finding in Part B of the step 3 analysis which it references, in which the ALJ found that Bailey had moderate limitations as to concentration, persistence or pace. (R. 33.)

least some limitation as to concentration, persistence or pace to be part of Bailey's RFC.

Remand for clarification on this point is therefore required because, if the ALJ determined that Bailey had moderate limitations with regard to concentration, persistence or pace as part of her RFC, then the ALJ failed to adequately question the VE with regard to those limitations. In her questions to the VE, the ALJ did not mention concentration, persistence or pace at all, but instead simply limited the hypothetical individual to medium work which involved only "simple, repetitive and routine work tasks." (R. 79.) As the Seventh Circuit has specified, however, limiting a claimant's RFC to simple, routine tasks does not adequately account for limitations in concentration, persistence or pace, which should generally be addressed. *See Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014). "[F]or most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do."); SSR 85-15, 1985 WL 56857 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job."). Although her exact determination as to the extent of the limitation is unclear, if the ALJ determined that Bailey's

RFC included moderate limitations in concentration, persistence or pace, the ALJ erred by failing to include this limitation in her hypotheticals posed to the VE.

Perhaps anticipating this problem—and in tension with her argument that the ALJ found Bailey to have no limitations with regard to concentration, persistence or pace—the Commissioner also argues that the ALJ appropriately accounted for such limitations through her reference to the opinions of Drs. Hollerauer and Fyans, who in turn concluded broadly that Bailey was not disabled. It is true that, in some cases, the Seventh Circuit has found that an explicit reference to a claimant's limitations with regard to concentration, persistence or pace is not required where a physician who accounts for those limitations "effectively translate[s] an opinion regarding the claimant's mental limitations into an RFC assessment." *Milliken v. Astrue*, 397 F. App'x 218, 221 (7th Cir. 2010); *see also Martinez v. Astrue*, No. 09 C 3051, 2010 WL 1292491, at *12 (N.D. Ill. Mar. 29, 2010). In such cases, there is no error where a physician discusses the claimant's mental limitations and relates those limitations to a functional ability, and the ALJ then adopts that functional ability in framing her questions to the VE. *See, e.g.*, *Simila*, 573 F.3d at 522 ("[The claimant's] moderate difficulties with concentration, persistence, and pace stemmed from his chronic pain syndrome and somatoform disorder, which the ALJ included in the hypothetical. . . . Consequently, by limiting the hypothetical to unskilled work, the ALJ incorporated all of [the claimant's] credible limitations.").

In this case, however, there was no such translation. It is true that the ALJ referenced the opinions of Drs. Hollerauer and Fyans in rendering her RFC determination, noting that Dr. Hollerauer "opined that the claimant does not have a severe mental impairments [sic]," and that "this was also affirmed on reconsideration." (R. 36.) However, the ALJ did not further discuss those doctors' findings. *See id.* And neither Dr. Hollerauer nor Dr. Fyans "translated" Bailey's mental limitations into functional limitations, as neither mentioned any limitations as to concentration, persistence or pace in reaching their conclusions. Dr. Hollerauer's report—after summarizing the medical record—merely concluded in evaluating Bailey's credibility that "[s]he is distractible but is able to do tasks as her medical condition will allow" without further specifying what work Bailey's "medical condition will allow." (R. 352.) And Dr. Fyans affirmed this conclusion on his review by simply checking a box on a preprinted form and adding only that Bailey's testimony was "partially credible in light of medical evidence." (R. 367-69.) There was no "translation" of Bailey's possible limitations in regard to concentration, persistence or pace in this case on which the ALJ could have relied.

Remand is therefore appropriate to clarify the ALJ's reasoning on this point. If the ALJ found that Bailey's RFC included moderate limitations with regard to concentration, persistence or pace, then the VE should be questioned as to the effect of such limitations directly "in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *O'Connor-Spinner v. Astrue*, 627 F.3d 614,

621 (7th Cir. 2010). If the ALJ determined that Bailey's RFC did not include a moderate limitation with regard to concentration, persistence or pace, then the ALJ should specify the basis for that finding.[10]

## D. Bailey's Request for Reassignment to a New ALJ

In her briefing, Bailey also requests that this case be assigned to a new ALJ. But this Court has "no general power . . . to order that a case decided by an administrative agency be sent back . . . to a different administrative law judge." *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996). In some extreme circumstances, a court may nonetheless recommend the assignment of a new ALJ on remand, *see id.* (suggesting reassignment where ALJ's tone suggested "unshakable commitment to the denial of [the] applicant's claim"), but no such circumstances are present in this case. The Court sees no reason why it would suggest a different ALJ be assigned on remand in this case.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 25] is GRANTED in part. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

---

[10] Bailey also argues that the ALJ erred because, while she questioned the VE about a hypothetical person who would "likely be off-task for 25 percent of a workday," (R. 79), she did not specify the parameters of "25 percent" nor did she address such a limitation in her opinion. The Commissioner argues that the ALJ did not err because she did not find Bailey credible as to the extent of her limitations as to concentration, persistence or pace, and therefore the 25 percent limitation did not apply. Clarification as to the ALJ's RFC finding with regard to concentration, persistence or pace should also clarify the relevance (if any) of this possible limitation to Bailey's RFC.

**SO ORDERED.**                    **ENTERED:**

*Maria Valdez*

**DATE:** _____ **November 17, 2015**          _____

**HON. MARIA VALDEZ**
**United States Magistrate Judge**